1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

**SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12 ROBERT WILLIAM KNOPPING, | CASE NO. 18-cr-4451-LAB |
| 13 Petitioner, | 22-cv-1132-LAB |
| 14 vs. | **ORDER:** |
| 15 UNITED STATES OF AMERICA, | **(1)   GRANTING MOTION TO FILE REPLY, [Dkt. 77]; and** |
| 16 Respondent. | |
| 17 | **(2)   DENYING MOTION TO SET ASIDE SENTENCE UNDER 28 U.S.C. § 2255, [Dkt. 72]** |
| 18 | |
| 19 | |

20        Petitioner Robert William Knopping moves to vacate or set aside his

21   sentence under 28 U.S.C § 2255. (Dkt. 72).[1] The Government opposes

22   Knopping's motion. (Dkt. 79, 83). Having carefully considered the parties'

23   briefing and evidence, the Court **DENIES** the motion.

24   //

25   //

26

27   _____

28   [1] Page numbers cited in this Order refer to those imprinted by the Court's electronic case filing system.

# I.   BACKGROUND AND STATEMENT OF FACTS

On September 17, 2018, Knopping attempted to enter the United States from Mexico, but he was stopped at the San Ysidro Port of Entry and asked where he was headed. (Dkt. 1 at 2). During an inspection of Knopping's vehicle, border guards smelled fuel coming from inside the vehicle, noticed evidence of tampering with the fuel tank, and sent the vehicle through a scanning machine that showed anomalies in the fuel tank. (*Id.*). The vehicle was then sent to secondary inspection where the fuel pump cover was removed revealing thirty wrapped packages. (*Id.* at 2–3). All thirty packages contained methamphetamine. (*Id.* at 3).

Knopping was arrested, given Miranda warnings, and waived them. (*See id.*; Dkt. 89-3). He admitted he knew the vehicle contained drugs, and also admitted that he had successfully smuggled narcotics into the United States before. (Dkt. 1 at 3; *see also* Dkt. 89-3). He added that he had been offered money to recruit new drivers to smuggle drugs. (Dkt. 1 at 3; 31 at 3–4; *see also* Dkt. 89-3). Additionally, Knopping's cell phone was seized. (Dkt. 31 at 4). It contained messages corroborating he had attempted to recruit others to smuggle drugs. (*Id.*; *see also* Dkt. 72 at 12; 89-3).

According to Knopping, the investigating agents attempted to unlock his cell phone, but when unsuccessful, they asked him to unlock it for them. (Dkt. 72 at 9). Knopping refused, but eventually the agents unlocked his cell phone and accused him of offering someone else money to move drugs across the border through text messages. (*Id.* at 12). Knopping alleges the agents coerced him into talking without counsel present because he wasn't in the right mindset. (*Id.* at 13). After seeing that his phone had been unlocked, Knopping continued speaking with the agents. (*Id.* at 13–14). He claims he requested counsel multiple times during the interview, but the agents ignored his requests. (*Id.* at 14).

Two weeks before his scheduled trial date, Knopping pled guilty to importing methamphetamine. (Dkt. 26, 58). He signed a written plea agreement swearing under oath that he knowingly, voluntarily, and intelligently waived his trial rights. (Dkt. 28). Pending sentencing, and while on pretrial release, Knopping violated his pretrial release conditions by using drugs. (Dkt. 55 at 2:15–20). Additionally, Knopping failed to appear for sentencing on March 18, 2019, (*Id.* at 2:5; Dkt. 37), absconding for about four months before turning himself in on July 11, 2019, (Dkt. 57 at 39:14–24).

A petition was filed alleging Knopping had violated conditions of pretrial release by using drugs and absconding. (*See* Dkt. 59 at 2:10–11). Knopping waived his right to a prompt revocation hearing because his counsel was attempting to negotiate an alternative plea agreement that wouldn't result in new formal charges. (*See* Dkt. 41; 57 at 3:13–23).

On September 30, 2019, the Court entered judgment and sentenced Knopping to a ninety-month custodial term and five years of supervised release. (Dkt. 49, 57). He appealed the Court's sentence. The Ninth Circuit affirmed in part, vacated in part, and remanded. (Dkt. 50, 69). This Court then filed a judgment in accordance with the Ninth Circuit mandate on July 14, 2021. (Dkt. 70).

Over a year later, Knopping filed a § 2255 motion. (Dkt. 72). The Government opposed the motion, (Dkt. 79),[2] and filed supplemental briefs addressing the merits of Knopping's ineffective assistance of counsel claim,

---

[2] Knopping also filed a motion requesting leave to file a reply. (Dkt. 77). In the initial order setting a briefing schedule in the matter, the Court permitted Knopping to file a reply two weeks after the Government filed its opposition. (Dkt. 73). The Court subsequently extended the Government's time to file its opposition to February 17, 2023. (Dkt. 78). Knopping filed his reply on February 28, 2023. (Dkt. 80). The Court finds that filing timely, and therefore **GRANTS** Knopping's request and accepts the reply. (Dkt. 77).

1  (Dkt. 83, 89). Knopping asked for additional time to reply to the Government's

2  initial supplemental brief, (Dkt. 84), which the Court granted, (Dkt. 85).

3  Knopping never responded to the initial supplemental brief, but he submitted a

4  reply to the Government's second supplemental brief. (Dkt. 90).

5  **II.    DISCUSSION**

6        Knopping cites six instances where his counsel was supposedly

7  ineffective. (Dkt. 72 at 5). The Government maintains the motion is untimely,

8  and therefore procedurally barred. (Dkt. 79 at 3). The Government alternatively

9  argues that the motion lacks factual support and doesn't demonstrate either

10  ineffective assistance or prejudice. (Dkt. 83 at 3–11; 89 at 2–7).

11        **A.    Statute of Limitations**

12        A prisoner in custody may move the court that imposed his sentence to

13  vacate, set aside, or correct the judgment under § 2255 if the sentence was

14  imposed in violation of the Constitution or laws of the United States, the court

15  was without jurisdiction to impose such a sentence, the sentence was longer

16  than the maximum authorized by law, or the sentence is otherwise subject to

17  collateral attack. 28 U.S.C. § 2255(a). A one-year limitations period applies to

18  motions brought under this section. The limitations period runs from the latest

19  of: (1) the date on which the judgment of conviction becomes final; (2) the date

20  on which the impediment to making a motion created by governmental action

21  in violation of the Constitution or laws of the United States is removed, if the

22  movant was prevented from making a motion by such governmental action;

23  (3) the date on which the right asserted was initially recognized by the Supreme

24  Court, if that right has been newly recognized by the Supreme Court and made

25  retroactively applicable to cases on collateral review; or (4) the date on which

26  the facts supporting the claim or claims presented could've been discovered

27  through the exercise of due diligence. *Id.* § 2255(f); *United States v. Blaylock*,

28  20 F.3d 1458, 1465 (9th Cir. 1994). Section 2255 provides that a hearing must

18-cr-4451-LAB
22-cv-1132-LAB

1  be granted to determine the validity of a petition brought under that section
2  "[u]nless the motions and the files and records of the case conclusively show
3  that the prisoner is entitled to no relief." *Blaylock*, 20 F.3d at 1465.

4        This Court entered judgment after remand on July 14, 2021. (Dkt. 70).
5  Knopping's one-year limitations period under § 2255 expired on July 14, 2022.
6  He mailed his motion on July 22, 2022, eight days after the expiration of the
7  limitations period. (Dkt. 72 at 19). The motion was eventually filed on the
8  Court's docket on August 1, 2022, eighteen days after the expiration of the
9  limitations period. (*Id.* at 20).

10       Knopping contends his untimeliness should be excused because he
11  mistakenly believed the one-year limitations period started on either the day
12  he personally received the Court's order in the mail, or the day his writ to the
13  Supreme Court was denied, rather than the day on which final judgment was
14  entered. (Dkt. 80 at 4). He also argues that short staffing and a change of
15  mailing policy within the Bureau of Prisons ("BOP") attributed to his untimely
16  filing. (*Id.* at 2–4).

17       These arguments are unpersuasive. Even accepting Knopping's
18  allegations that he mistakenly believed the deadline to be different and that he
19  was somehow hindered by the BOP's mailing policy, the explanations don't
20  justify the delay. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001).
21  Knopping's motion is time-barred and **DISMISSED** on this ground.

22       **B.    Ineffective Assistance of Counsel**

23       Regardless of Knopping's untimely filing, the Court alternatively rejects
24  his ineffective assistance claim on the merits. To establish ineffective
25  assistance of counsel, a petitioner must prove by a preponderance of the
26  evidence that: (1) the assistance provided by counsel fell below an objective
27  standard of reasonableness; and (2) there is a reasonable probability that, but
28  for counsel's errors, the result of the proceeding would've been different.

18-cr-4451-LAB
22-cv-1132-LAB

*Strickland v. Washington*, 466 U.S. 668, 688 (1984). To satisfy the deficiency prong of the *Strickland* test, a petitioner must show that his counsel's performance "fell below an objective standard of reasonableness" and wasn't "within the range of competence demanded of attorneys in criminal cases." *Id.* at 687 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). There is a "strong presumption that counsel's conduct falls within a wide range of professional assistance." *Id.* at 689. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Knopping makes six arguments in support of his ineffective assistance claim: (1) his counsel failed to properly advise him of his rights and options to defend himself in a criminal case; (2) he wasn't afforded his right to a pretrial release revocation hearing; (3) agents at the border conducted an unconstitutional search of his cell phone; (4) his counsel failed to move to suppress certain statements; (5) his counsel failed to obtain and review discovery; and (6) his counsel failed to object to the use of his juvenile record, which he argues resulted in the imposition of a longer sentence. (Dkt. 72 at 5). The Government's response refutes each of the arguments and demonstrates that none affected the outcome of this case. (*See* Dkt. 83 at 6–11; 89 at 2–7).

## 1. Knopping Was Properly Advised of His Rights and Options

The record refutes Knopping's claim that he wasn't properly advised of his rights and options to defend himself. During his plea colloquy on December 20, 2018, before Magistrate Judge Barbara L. Major, Knopping repeatedly stated he understood he was pleading guilty to importing methamphetamine and waiving his right to a trial. (Dkt. 58 at 3:15–4:22, 7:14–25). He said he understood by pleading guilty he was admitting the amount and type of drug involved in the case, and relieving the Government of its obligation to prove the elements of the crime to a jury beyond a reasonable

doubt. (*Id*. at 8:14–9:3). The record likewise demonstrates that Knopping was informed that by pleading guilty, he faced a maximum sentence of forty years and a mandatory minimum sentence of five years. (Dkt. 28 at 4; 58 at 9:9–12). He stated he understood the possibility of those penalties. (Dkt. 58 at 9:9–21). He also said he understood that by pleading guilty he was waiving his right to appeal and collaterally attack his conviction and sentence. (*Id*. at 12:22–13:11).

Knopping now argues he answered all of Judge Major's questions affirmatively because his counsel told him to do so to prevent his plea from being rejected (if convicted at trial Knopping faced a possible sentence of life in prison). (Dkt. 72 at 6). He asserts that all defense attorneys advise their clients to answer affirmatively and that he was "falsely advised [of] possible and likely outcomes." (*Id*.). But his conclusory allegations are refuted by the record, and in any event are insufficient to prove his counsel was ineffective. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989). Other than attributing to counsel a generalized statement that he could face a life sentence, Knopping doesn't identify any statement his counsel made that was false. (*See* Dkt. 72 at 6); *see also Grubb v. Woodford*, 105 F. App'x 142, 144 (9th Cir. 2004) (affirming denial of ineffective assistance of counsel claim because defendant was informed of his rights, including the possible sentence, he waived his rights, and he entered into a plea agreement for a sentence less than the maximum exposure).

One gleans from Knopping's petition that much of his dissatisfaction stems from receiving a sentence that was higher than what he expected. However, Judge Major advised Knopping of exactly that possibility during the change of plea colloquy, and Knopping said he understood. Judge Major told Knopping that the sentencing judge would "consider the sentencing as advisory in determining [his] sentence," and that "the sentencing judge may impose that mandatory minimum sentence even if the sentencing guidelines

advise a lower sentence." (Dkt. 58 at 9:23–10:16). Knopping responded that he'd discussed this with his counsel, (*id.* at 10:1–3), and acknowledged that he understood his sentence might be longer than he expected:

> THE COURT: [N]either your attorney nor anyone else can guarantee the sentence you will receive. If the sentence you receive is more severe than you expect, you will be bound by your guilty plea and you will not have a right to withdraw your guilty plea, do you understand that, Mr. Knopping?
>
> THE DEFENDANT: Yes.

(*id.* at 10:17–23).

No evidence demonstrates Knopping's guilty plea was the product of ineffective assistance. To the contrary, the record establishes that he read the written plea agreement, initialed each page, and signed the agreement declaring that he had discussed it with his attorney and fully understood its meaning and effect. (*Id.* at 12:2–20). Knopping also later confirmed he was satisfied with the representation he received from his counsel. (*Id.* at 12:12–14).

In sum, Knopping was properly advised of his rights and options to defend himself in his criminal case, and he knowingly, voluntarily, and intelligently waived them.

### 2. Knopping Waived His Right to a Revocation Hearing

Knopping waived his right to a revocation hearing for violations of pretrial release. Under Federal Rule of Criminal Procedure 32.1(b), a revocation hearing must be held so the defendant has an opportunity to make a statement and present any information in mitigation unless this right is waived. Fed. R. Crim. P. 32.1(b). Here, Knopping waived his right to a revocation hearing to allow his counsel the option to negotiate an alternative plea that would prevent Knopping from being indicted on additional charges for violating pretrial release

conditions and absconding. (*See* Dkt. 41; 57 at 3:13–23). Knopping's counsel declared that she met with him to go over his rights and review his options, and he confirmed he was prepared to go forward with sentencing. (Dkt. 89-1 ¶ 15).

Once again, Knopping's arguments reflect dissatisfaction, not with his counsel, but with the sentence he received. He argues "[he] was given an additional 30 months" when he thought "he would receive a [total] sentence of 60 months." (Dkt. 72 at 7; *accord* Dkt. 90 at 3, 7, 9). But after he absconded before sentencing, the Court wasn't obligated to credit him with the full downward adjustments originally agreed to. (Dkt. 57 at 26:8–25). Knopping breached the plea agreement by failing to appear, (Dkt. 28 at 11), triggering a two-level upward adjustment for obstruction of justice, U.S.S.G. § 3C1.1. On Knopping's appeal, the Ninth Circuit agreed the Court didn't "abuse its discretion by concluding that Knopping's failure to appear at the initial sentencing and subsequent decision to abscond for several months were inconsistent with complete acceptance of responsibility." (Dkt. 69 at 3).

Knopping incorrectly alleges that he received a longer sentence because his counsel failed to pursue a pretrial revocation hearing. This allegation is refuted by the record. Counsel argued for the Court to impose no greater sentence than the mandatory minimum of sixty months. (Dkt. 57 at 7:15–20). Counsel explained that Knopping absconded because he feared going to prison during his initial sentencing, (*id.* at 9:6–11); while missing, he remained on good behavior and wasn't rearrested, (*id.* at 9:15–18); and he accepted responsibility from the inception of the case and pled guilty under a "Fast Track" plea agreement, (*id.* at 15:2–20). Despite counsel's arguments, the Court disagreed that Knopping was entitled to downward adjustments for acceptance of responsibility and Fast Track. (*Id.* at 26:8–25). In sum, Knopping's noncompliant behavior, not any malfeasance by his counsel, was the reason he received a longer sentence.

18-cr-4451-LAB
22-cv-1132-LAB

### 3. Cell Phone Search

To establish ineffective assistance of counsel based on failure to suppress evidence, a defendant must show that a reasonable probability exists both that the motion would've been granted and the outcome would've been different. *See, e.g.*, *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). Knopping fails to make the required showing here. His cell phone and the data within it were subject to search at the border without a warrant. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985); *United States v. Cano*, 934 F.3d 1002, 1014, 1016 (9th Cir. 2019).

When Knopping was arrested on September 17, 2018, the investigators relied on the border search exception to run a Cellebrite download of his cell phone. (Dkt. 89-2). While Knopping claims his cell phone was locked, (*see* Dkt. 72 at 9; 90 at 4), it had to be unlocked before the Cellebrite download, (Dkt. 89-2). Either Knopping provided his passcode or the cell phone was already unlocked because the investigators "wouldn't have attempted to crack or bypass the PIN [themselves]. That's something our CFAs would have done later if needed with other software." (*Id.*). In the post-arrest recorded video statement, Knopping never raised an issue with his cell phone being unlocked or the information obtained. (*See* Dkt. 89-3). Under then existing law, the border search was legal and any motion to suppress the evidence would've been futile. Moreover, there wasn't a point for counsel to litigate motions related to his cell phone because Knopping agreed to plead guilty under a Fast Track agreement. (Dkt. 89-1 ¶ 10); *see also United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005) ("[I]t is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects."). Counsel's inaction in this regard wasn't ineffective and didn't change the outcome of Knopping's case.

1

2

### 4.    Suppression of Statements

Knopping argues vaguely that his disgruntled statements to the agents

3 should've been suppressed because his rights were violated when he

4 requested to speak to counsel. The Court assumes that he is referring to

5 statements he made about importing drugs on a prior occasion. (*See* Dkt. 72

6 at 13–14).

7

8

Again, Knopping must show that a reasonable probability exists both that

the motion would've been granted and the outcome would've been different

9 absent the introduction of the unlawful evidence. *See Kimmelman*, 477 U.S. at

10 382. Knopping acknowledges he was given *Miranda* warnings, and admits he

11 voluntarily "engaged in conversation, [albeit] a disgruntled one" with the

12 agents. (Dkt. 72 at 14). He offers no evidence that the agents coerced him to

13 speak with them. *See United States v. Gonzalez-Sandoval*, 894 F.2d 1043,

14 1048 (9th Cir. 1990) ("Coercive police activity is a necessary predicate to the

15 finding that a confession is not 'voluntary' within the meaning of the due

16 process clause."). He also insists he requested counsel numerous times during

17 his conversation with the agents, but the agents "simply ended the interview"

18 after his "final" request for counsel. (Dkt. 72 at 14).

19

20

To the contrary, Knopping didn't request counsel. In the post-arrest

recorded video statement, Knopping acknowledged he understood his rights

21 provided in the *Miranda* warning, agreed to speak with the investigators without

22 counsel present, and never requested to speak to counsel during the duration

23 of the recorded statement. (*See* Dkt. 89-3). Almost twenty-five minutes into

24 questioning, Knopping asked when he would get a phone call and the

25 investigator responded that we could talk about that later. (*See id.*). Knopping

26 continued answering questions for thirty-nine minutes before requesting a

27 phone call to his mother, so she doesn't think that he "is dead or something."

28 (*See id.*). Knopping's mother reported that Knopping "has a tendency to

18-cr-4451-LAB
22-cv-1132-LAB

embellish facts," (Dkt. 31 at 10), which appears to be happening here. If Knopping requested counsel after the recorded statement, it's unclear if he made any incriminating statements prior to invoking his right to counsel.

Even if Knopping was entitled to suppress statements made after he invoked his right to counsel, this argument was waived when Knopping pled guilty under a Fast Track agreement. (Dkt. 89-1 ¶ 10); *see also Lopez-Armenta*, 400 F.3d at 1175; *Williams v. Ryan*, No. 05-cv-737-WQH-WMc, 2010 WL 3768151, at *12 (S.D. Cal. Sept. 21, 2010) (citing *Strickland*, 466 U.S. at 691 and *Langford v. Day*, 110 F.3d 1380, 1386–88 (9th Cir. 1996) (petitioner failed to demonstrate ineffective assistance of counsel based on a failure to file suppression motion where he insisted on pleading guilty)). Counsel didn't act unreasonably by not pursuing a motion to suppress Knopping's voluntary statements taken in compliance with *Miranda*.

### 5.   Discovery Review

"Ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986). Here, Knopping argues his counsel "never once went over a single piece of evidence" and "it is virtually impossible for counsel to have reviewed every piece of the evidence . . . [or] for counsel to have done any sort of investigation of the case, the facts, and information provided." (Dkt. 72 at 14–15). Knopping's claim is directly contradicted by his counsel's statement that she received approximately fifty pages of discovery and reviewed the discovery with him on multiple occasions. (*See* Dkt. 57 at 21:25; 89-1 ¶¶ 8–9). Even Knopping later admits that he "did in fact receive a partial discovery via email" but it was only a few pages of basic information. (Dkt. 90 at 2). Knopping's concession proves that his counsel did obtain and review discovery in his case. Moreover, Knopping waived this claim by failing to raise it before pleading guilty. *See United States v. Jackson*, 697

F.3d 1141, 1144 (9th Cir. 2012) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) and *Lopez-Armenta*, 400 F.3d at 1175) ("An unconditional guilty plea waives all nonjurisdiction, antecedent defects.").

Regardless, Knopping was caught red-handed smuggling drugs into the United States from Mexico. The evidence against him was overwhelming, so it wasn't ineffective for counsel to concentrate her efforts on advising him to plead guilty rather than prepare for a trial where, if convicted, Knopping would likely receive a much harsher sentence. *See Eggleston*, 798 F.2d at 376. As the Government points out, Knopping hasn't provided any version of facts that would have resulted in a different outcome. (Dkt. 83 at 10); *see also Bragg v. Galaza*, 242 F.3d 1082, 1088–89 (9th Cir. 2001) (holding mere speculation that further investigation might've led to helpful evidence isn't sufficient to show ineffective assistance). To the contrary, the record demonstrates that counsel reviewed the discovery and made a strategic determination of how to proceed with the case.

### 6.    Object to Use of Knopping's Juvenile Record

The Court properly considered Knopping's juvenile record during his sentencing. Under the United States Sentencing Guidelines, one point is added for each juvenile sentence imposed for an offense committed prior to the defendant's eighteenth birthday if the juvenile sentence was imposed within five years of the defendant's commencement of the current offense. U.S.S.G. §§ 4A1.1(c), 4A1.2(d). Knopping's juvenile criminal record included auto thefts and failing to obey an order of the juvenile court. (Dkt. 57 at 29:23–30:6). These prior convictions (true findings) counted for one point each, placing Knopping in Criminal History Category II. (Dkt. 31 at 7–8). Both juvenile sentences were imposed within five years of Knopping's federal offense.

Knopping also asserts in a February 22, 2023 letter to the Court that "[he] did want to participate in the safety valve." (Dkt. 81 at 1). However, the record

establishes that Knopping didn't qualify for Safety Valve relief because he was too "terrified" to participate in a debrief session with the prosecutor. (Dkt. 57 at 18:10–14). Under then existing law, his two criminal history points precluded him from eligibility for Safety Valve relief. U.S.S.G. § 5C1.2; (Dkt. 31 at 17).

Regardless, Knopping can't demonstrate that, but for the alleged error, his sentence would've been different. *See Strickland*, 466 U.S. at 688. His ninety-month sentence was far shorter than the low end of his guidelines range of 262 to 327 months. (Dkt. 57 at 35; 70 at 2). To the contrary, Knopping's counsel skillfully negotiated the mandatory minimum sentence he faced from ten years down to five years, (Dkt. 57 at 19:7–25), and her arguments urging many other mitigating factors helped reduce his sentence even further, (*id.* at 7:15–9:25, 15:13–20).

### 7.    No Evidentiary Hearing Required

An evidentiary hearing isn't required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) ("Merely conclusory statements in a § 2255 motion are not enough to require a hearing."). Courts may decide whether facts can be gathered and the record supplemented with other documentary evidence prior to determining the need for an evidentiary hearing. *Shah*, 878 F.2d at 1160; *see also United States v. Olmo*, 663 F. Supp. 102, 103–04 (N.D. Cal. 1987). An evidentiary hearing isn't required in this case because Knopping hasn't made "specific factual allegations which, if true, would entitle him to relief." *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982).

## III.    CERTIFICATE OF APPEALABILITY

A certificate of appealability is authorized "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, "the petitioner 'must demonstrate that the

issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; *or* that the questions are adequate to deserve encouragement to proceed further.'" *Lambright v. Stewart,* 220 F.3d 1022, 1025 (9th Cir. 2000) (alteration and emphasis in original) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). In the absence of a certificate of appealability, no appeal in a § 2255 proceeding may be heard. 28 U.S.C. § 2253(c).

Having reviewed the matter, the Court finds that Knopping hasn't made a substantial showing that he was denied a constitutional right and isn't persuaded that jurists could disagree with the Court's resolution of his claims or that the issues presented deserve encouragement to proceed further. Therefore, a certificate of appealability is **DENIED**.

## IV.    CONCLUSION

Ultimately, Knopping isn't concerned with the actions of his counsel. Rather, he states himself that he "only comes forward now to get the 60 month sentence he was promised" or that he "only comes forward for his sentence to be vacated and set aside and to be re-sentenced to the 60 month plea agreement that he signed for and was well-promised by his former Attorney, without any aggravating factors." (Dkt. 90 at 3, 9). He is upset that instead of receiving sixty months, he received ninety months, which he believes is a breach of the plea agreement he signed, and he didn't receive any benefit from pleading guilty under the Fast Track agreement. (*Id.* at 3, 7). In fact, Knopping did receive a benefit because his sentence of ninety months was below the guideline range of 262 to 327 months. While the Court recognizes that Knopping wants to be an upstanding citizen in the community, he must face the consequences of his uncontested criminal activity—imported methamphetamine into the United States and absconded for about four months. (*See id.* at 7).

18-cr-4451-LAB
22-cv-1132-LAB

1   Knopping's motion to vacate, set aside, or correct sentence under 28
2   U.S.C. §2255 in **DENIED**. The Court finds there is no right to or need for an
3   evidentiary hearing in this case. Knopping's motion for appointment of counsel
4   is **DENIED**, as is a certificate of appealability.

5   **IT IS SO ORDERED**.

6

7   Dated: April 12, 2024

8

9   **HON. LARRY ALAN BURNS**
10  United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18-cr-4451-LAB
22-cv-1132-LAB